Please all rise. Hear ye, hear ye, hear ye. The Honorable Ralph Porter, for the second judicial dismissal, is now open. Pursuant to adjournment. The Honorable Robert D. McClain, presenting. Please be seated. Your Honors, this case on the dot is Student Debt 16-0371. BMO Harris Bank of North America, formerly known as Harris Bank, has assigned me, of the Federal Deposit Insurance Corporation, as receiver for Kenport Bank. Plaintiff Appellant, to Joe Contarino, Incorporated, doing businesses. Hunter Collins of Illinois, Joe Contarino. Honorable Appellant, I now present the defendants. Defendants, appellants. Arguing on behalf of the appellant, Mr. Marcus Wasserman. Arguing on behalf of the appellant, Mr. Tim N. Casey. Mr. Wasserman. Just, I thought this case was continued because Mr. Carlson wanted it continuous. Is that correct, or am I thinking of another case? You're correct, Your Honor. Why is Mr. Carlson not here today? Mr. Carlson is here tonight, Your Honor. Oh, you're just not going to argue, is that it? Well, Mr. Carlson is here tonight. Okay, very well. You may proceed. Thank you, Your Honor. First, may it please the Court, good morning, Martin Wasserman, on behalf of BMO Harris Bank. First, thank you, Your Honor, for allowing us to address you this morning. The issue before the Court today is which party before you, BMO Harris Bank or the adverse plaintiffs, maintains a perfected lien on the funds being held by the Judgment Debtors third-party insider management company, Briargate Management, LLC. BMO Harris Bank alleges, pursuant to its citation to discover assets and the lien provided therein, that it is the only party who maintains a lien on these funds. The trial court erred. Just so I can be anal about this, and your lien is based upon the premise that as a Judgment creditor who has filed supplementary proceedings, you believe that you're merely attempting to take possession of assets that belong to the Judgment Debtor. Personal property. Okay, Andy, if any of those premises are false, then your syllogism fails, correct? Yes, Your Honor. Thank you. Your Honor, in reviewing this matter, the trial court erred in how it reviews these funds. It examined them under the microscope that these are rents. What it only provides is once these funds were collected, they are funds. They're personal property which it belonged over owing to the Judgment Debtor. And that Judgment Debtor, the borrower, does not have to account to any lender for how those funds are used or as the Seventh Circuit has said, the lien upon collection evaporates. Given that... So if the lien doesn't evaporate, then again, you're not successful, correct? If they maintain their lien on rents after the liens are collected, yes, they would be ahead of us. But because we believe the lien under our law does evaporate once they were collected and that these are just personal property and just funds, they maintain their lien on them. Now, BMI and Contorino never had access to these funds, though, did they? I'm sorry? I mean, not BMI, whatever, JCI or whatever the company was, and Contorino. When Briargate collected this money, did they ever have access to the funds? Well, it was in Briargate's control and it was in their account and it maintains its place in their account. And the contracts between JCI and Briargate state that they belong to the owner. And that's not affected by that Subsection J of the agreement? Your Honor, well, we believe Subsection J could allow for something like that to happen. But there were no signed agreements here. There was no signed assignments of that management agreement. And even if that wasn't true, the adverse claimants never took the steps necessary to enforce their liens. And it's the difference between perfection and enforcement. Well, we do not doubt or ever contest it. They have perfected liens on the rents. They never moved to enforce them. They never sought court authority to obtain possession. And because they never did that, the funds continued to go to Briargate Management on behalf of JCI. Any liens that were there because they were originally rent evaporated and they just became funds. And at that point, the only lien that is out there is BMO Harris's lien. And what the trial court failed to do is evaluate the liens on that basis. It evaluated that they maintain their composition as rents instead of them fading away and it just being personal property. And at that point, in most situations, and this is what happened in the West Bend Mutual case that all parties sag to, is they might have contractual claims to them, but BMO Harris has a lien. And it's a situation of a secure creditor versus an unsecure creditor. And as the funds were in that state, that they were personal property, and that these adverse claimants never actually moved forward and enforced their assignment of rents, they have no liens to the funds. They belong to the borrower. The borrower did not have to, I believe this court said in the DeKalb v. Purdy case, that in the hands of the borrower, they do not have to account to their lien holder. And it kind of draws a line between Illinois being a title state and a lien state, that you don't have a right to possession of these funds unless you're in possession of the property. And as the borrower was still here at JCI, was still in possession of the property, they still maintained a right to the funds in question. And those funds in question, we argue, subject to 1402 of the supplemental proceedings statute, we were granted a lien on all personal property. The JCI had an interest in, and all funds that Brian gave was holding on their behalf. Your argument makes a lot of sense under the common law, but does 31.5 of the conveyances act change that at all? We believe that what the legislation was doing was exactly what they said they were doing. They were codifying the common law. And there's a way to read 31.5 and read the whole statute that it codifies the common law. First, they point out that in multiple case points in 34.1.5, including the actual definition of rents, they, the legislature, incorporated what they call applicable law. And their own comments mention that we are codifying the common law. And if you look how that they put together the Illinois Mortgage Foreclosure Law, that for anyone to take the benefit of rents, they also have to take the burden of possession. Borrowers are given the ability to argue if there has been a default or not. Tenants are given extensive protections before they are faced with competing claims to who may be able to get the rents. And there's a judicial determination that there has been a default. You have a lien, and you can enforce it. And once you enforce it, you have the ability to collect the rents. But you also have the burden put forth in 1703 and 1704, the Illinois Mortgage Foreclosure Law, how you have to account for those funds, what they have to be spent for, that the property has to be insured, it has to be maintained, tenants have to be given the normal maintenance that they would expect. There's no foreclosure in this case, though. There is no foreclosure in this case. So why does the foreclosure law apply to this case? You know, we believe it shows the statutory construct put forth by the legislature that if you were to take the benefit of rents, you have to take the burden of possession. Otherwise, what the average claimant is claiming really opens a Pandora's box. Wouldn't you agree that the most specific statute to the facts in this case is 31.5? We believe 31.5 deals is most specific on how you perfect your assignment of rents, not how you enforce your assignment of rents. Why does subsection D talk about enforcement? It uses the word enforce in that subsection. Well, we believe 31.5, the legislature was trying to get after that, was what the courts at the same time, at the courts were at the time, around the time that that legislature was legislated, the time the bill was enacted, was that the, what the courts called the modern trend. Prior to the modern trend, you could not take any rents until the end of your foreclosure, until you take actual possession. What the modern trend allowed for was that you could agree in your documents that after default you could start obtaining rent and you could go in at the beginning of a foreclosure and you could seek a receiver, you could seek the appointment of mortgaging and possession. I believe in the Ducati break case there was some type of injunction where everything was put in escrow with the court. And if it's read that way, it falls in line with the other statutory enactments, all case law before and all case law after, which has said that constructive possession is absolutely necessary before you can enforce an assignment of rents. Doesn't that presume or at least raise the issue of whether or not these remedies are available because there is resistance as opposed to a voluntary capitulation? To me, I spent a lot of time as a judge of forceful injury and detainer. And it's an interesting common law concept. But there were many times when possession was given up voluntarily, in which case I never heard a defendant claim, Judge, you didn't file a proper five-day notice or properly serve me or so on and so forth. And why would they when they voluntarily relinquished possession? So self-help is what the forceful injury and detainer laws were supposed to prevent. And in a way, your argument strikes me as being that self-help or capitulation by agreement or by act is not available. Only enforcement through court order is required. Is that – explain to me why that doesn't seem to be logical. Well, I'm going to explain two ways, Your Honor. First, this was kind of the situation that came up in the Fidelity Mutual Life Insurance Company versus Harris Trust and Savings case where they said, you can come up with a contract where once the rents are collected by the borrower, they're free to do whatever they want with them. Now, the intervening fact here is that we placed a lien on those funds. And we placed a lien on funds which the average claimant did not maintain a lien against. The other issue is it opens kind of a Pandora's box of issues where in your original signing of rents, nothing would stop a lender if the average claimant's interpretation is correct. That in your original defaults, in your original loan documents, you just put in, upon default, we can collect the rents. And three, five years later, you claim that there's a default, and you start trying to collect the rents. You start sending letters to tenants. Do you have any burden to maintain the property? Can you sign new leases with these tenants? Can you evict these tenants? What if the borrower disagrees and says there is no default? That agreement would be void against public policy. That agreement in the loan document would be void as against public policy because it doesn't take care of the problem that the rents and profits doctrine was put in place to take care of. And our belief is that this agreement, once it came into the borrower's hands, they can contract with these lenders to do it however they want. They can give the lender the funds. But these funds were collected. And once they were collected, there was no lien on them. And they could choose to give them to the borrower. Were these forbearance agreements, in this case, void as against public policy under the rents and profits doctrine? To the extent, first, I know that trial court calls them forbearance agreements. I guess we can use them. I don't know that they're actually forbearance agreements. They're more like some unsigned letters of direction. Well, they were forbearance agreements in that the banks were not going to file foreclosure actions if they could collect the rents to pay the mortgage and the taxes and everything. We would say that all it says is that the rents should go to the lenders. It doesn't say what the lenders would actually do or forbear from. But we don't believe, to the extent that those forbearance documents give the lenders the right directly, we believe they are against public policy. And I point out specifically the Rockford Bank and Trust one, which accounts for 75% of the funds at issue, allows the funds to come to Rockford Bank and Trust before ever any expenses are taken out, taxes are paid, the management company is paid. Rockford Bank and Trust was to get their cut first. But then wasn't that the one where then they would take their cut but then send the rest back to an account to take care of the? If there was something left. I would hope that if you're running a, whatever this was, whether it was a house or an apartment complex, that your rents would exceed your mortgage. You would hope, Your Honor, but I don't know that there's anything in the record one way or the other that shows that they would. Did you argue in the trial court that these forbearance agreements, for lack of a better term, were void as against public policy? We did, Your Honor. We argued that this whole situation was, you know. To the extent, let me back up from that one. To the extent that these allowed the lenders to collect rent directly, we argued that they were against public policy, but our main argument was we believe that these rents belonged to JCI when they were collected by Brodergate, and thus there was no lien on them at all. The only rents that went directly to the lenders, in this case that I'm aware of, and correct me if I'm wrong, were the checks and money orders to Rockford, was it? I believe that is true, Your Honor. The rest all went to Brodergate. Brodergate was collecting, and they directed some without depositing straight to Rockford Bank Trust. Others were deposited with Brodergate. Your Honor, as we've talked about a couple of the areas of trial court training, I also want to focus on one other one, which is the trial court kind of removed the whole adversarial process here. The adverse claimants filed their adverse claims. The trial court asked us simply to file a response, and then it entered judgment. There was no discovery between the parties. There was no hearing. There was no situation where wounds were proved up. There was no opportunity to do discovery. They basically skipped that part and moved to judgment as a matter of law. There was no motion for judgment as a matter of law. There was no trial. There was no motion for settlement of judgment. All the things you would expect as part of our adversarial process were skipped completely. And this isn't a situation where we're just trying to make the adverse claimants walk through their proofs. After the initial briefs were filed, but before the court ever entered its original order, we discovered that Rockford Bank and Trust had entered into an agreement with JCI which satisfied their claim in its entirety. Brought this to the court's attention as part of our motion to reconsider. The court refused to recognize it, refused to have the adverse claimants to actually go through and prove up they had liens. Part of having a lien is not only that you recorded a document. It's also that you owed some indebtedness. Here, they never had to prove that part of their lien. You didn't object to the petition sitting review, correct? No. So at the beginning of that hearing, the judge took care of that summarily, correct? Absolutely. And then went to a hearing on what I thought was the viability of the adverse claims, correct? We had legal arguments over much of the situation that we're talking about is do they maintain a lien on these funds which were in the possession of Briargate? But after that, instead of saying, okay, now prove up you actually have liens and prove up the facts and so forth, the trial court just entered judgment. Did you ask for it? Did we ask for it? Did you say once the trial judge said, I find that these liens are present, did you say, okay, judge, now we need to have a hearing? I don't know that at the end of that hearing we did say that. I don't think anybody did. No. But I would say that it's part of our adversarial system that the judge, after you have legal arguments. You're objecting to it now, but you didn't object to it at the trial court level. You sort of went along with it and said, okay. We heard what was basically, I think, analogous to our motion to dismiss in response to the affidavit's claims, and the judge kind of skipped every part of it moving forward and just entered a final judgment. But it is your obligation to make sure a record is made and that the court rules on everything that is before it, at least from your perspective, correct? Absolutely, Your Honor, but I don't know that the actual facts were before the court. There was no, we're not talking about verified pleadings. Isn't that also your burden? Yes, Your Honor. There is obviously some burden which falls on us, and I'm not going to completely disagree with you, but there's also some nature of the process that goes with it that, you know, you are at the beginning of the step, and the court, you know, if someone files a complaint, file a motion to dismiss, and the court says, now we're just getting into judgment, you kind of scratch your head and say, what about the six other steps where we, you know. That's the part that you didn't do. It's the part we never got to do. No, you never said, Judge, what about the other six steps, correct? We did it in our motion to reconsider, which was kind of our first time. We were expecting a ruling on the legal issues, and then we would move to basically the facts of the case. The judge skipped that part, so the fact of the case, and just went to final judgment. And in doing so, interpreted, basically interpreted the facts without hearing any evidence, affidavits, or anything of the nature. And even beyond that, our motion to reconsider raises a new fact, raises a fact that was not apparent when we filed our briefs, but came into being after that. Actually, I believe after we argued before the court ever ruled. So it was a new fact. It's the kind of fact that you could bring on a motion to reconsider. Well, doesn't that imply that the prior proceeding contemplated, deliberated upon, and was presented with facts? Because if you're talking about presenting new facts, it sounds like either no facts were presented previously or all facts were presented previously. We thought this was a pretty important fact to point out to the court, and you're right. No facts were presented to the court. I didn't say that.  I apologize, Your Honor. Is whether or not a lien exists, is that a question of fact, law, or a mixed question of fact and law? Mixed question. And in your motion to reconsider, did you argue that you never had an evidentiary proceeding, in which case the new fact, had it been held now, could have been taken into consideration? Yes, Your Honor. Any other questions? No, thanks. Thank you, Your Honor. Thank you. You'll have an opportunity to make a vote. Thank you. Ms. Casey? May it please the court, counsel, good morning. My name is Kim Casey. I'm here for the appellees this morning, and we are asking that this court affirm, of course, the trial court's decision, which we believe was correctly based on the assignment of rent statute and granted priority on the rents held by this third party to the various appellees, banks, adverse claimants, who had recorded assignments and had entered into agreements, not only with the S&R, but with the third party, for the collection of rents. I think it's important to point out to the court what the result of the rule requested by BMO Harris would be in this manner. First of all, they are here as champions of the rents and profits doctrine. However, the rents and profits doctrine purpose is to protect tenants and is to protect the owner and mortgagor of the property so that rents are not stripped from the property to the detriment of the owner and of the tenants. The purpose is not to assist a judgment creditor like BMO Harris. If the rule that BMO requests were in place, tenants and owners wouldn't be protected because, of course, BMO could, by citation lien, grab the rents, those funds that are in the hand of the property manager before any expenses were paid and affect the collateral that adverse claimants have, that they had taken all steps to protect by recording assignments of rents, entering into agreements, and otherwise protecting the property. Counsel argues that tenants aren't protected by your reading of 31.5 because it would allow lenders to put into mortgage documents provisions that basically say, when you default, I'm taking all your rents. Well, I think that that type of an agreement might not pass muster as against public policy. I think that portion of the rents and profits rule has not been abrogated by the statute that we are here to discuss today because I think the court, or someone who would object, could say, does that agreement protect the tenants, does it protect the property, and still make that analysis. We have not, I think BMO Harris would like to ignore the statute, which we believe is very clear. We are here, I think, to talk about Section 31.5. The court needs to look at the statute according to the normal rules of statutory construction, plain meaning. This is a specific statute. It's the most specific statute regarding assignment of rents, and we believe it's controlling. It's also, we believe, unambiguous, so legislative intent isn't even needed. Are you suggesting that there's a friction or a conflict between the statutes relating to citations, to discoverances, and assignment of rents? I don't know that there is a friction because the citation statute says, when you cite a third party, you may, you are looking for property of the judgment debtor. And if it's not within the judgment debtor's control or possession, then the citation, the party serving in the citation has no lien. And from the beginning, Briargate, who was the citation respondent, said, we're not holding any property of the judgment debtor because we have agreements that Briargate, the third party, and the judgment debtor, and the lenders enter into, to take the control of that source of funds out of the hands of the judgment debtor and protect the property. What is your response to Mr. Wasserman's statement that the trial court never actually held an evidentiary hearing to determine whether or not your assignments of rent were actually valid, enforceable contracts? Well, as... Which I think impliedly suggests that maybe if there was a wrong or a malicious motive that it was actually, or these were actually agreements to defraud creditors. Well, Judge, I think that as some of the prior discussion mentioned, it's the burden of the judgment creditor to show that they have, that the citation respondent actually has those assets. And this issue for BMO Harris was really never raised before the trial court. In the record, at page 959, there was an October 1st order which allowed the filing of the adverse claims and set responses, reply, and surreply, and set an argument date. BMO requested that the court should determine that its interest is prior, but it never asked for a hearing. And in the report of proceedings, the court said, we will grant over no objection from BMO the filing of the adverse claims, and then we'll proceed with a couple other motions, and then we'll have arguments on the merits of these adverse claims as we proceed. No objection by BMO. They were perfectly happy to do that. They never issued discovery. They never did anything which would indicate that there were factual issues. In fact, I think the trial court, in both of its opinions, kind of said a couple times, nobody's ever told me there's a factual issue about the recording of these assignments, about the agreements themselves, and so I'm moving forward to determine this issue. So we would say that BMO acquiesced in the proceedings on which the lower court was induced to act. They didn't ask for anything else. The issue was very thoroughly briefed and argued, and only after an adverse decision did they determine that perhaps they needed some kind of evidentiary hearing. And there was some indication that there was a consent foreclosure or something? That's correct. In at least one of the properties? That's correct. Does that change? I don't believe it does change that, Your Honor, because, and we had cited to the trial court judge that there's not a waiver of the rights of the adverse claimants that did foreclosure judgments toward Briargate, who contractually was holding rents, or towards tenants. And I think in that case, we cited both Randall Plaza and the Supreme Court case, List v. Harris, that says the lien on rents isn't affected by a merger of title and the actual lien in the consent foreclosure. And this is a third party who's holding money. We certainly made our claims in the trial court, and the consent foreclosure, which BMO raises, they were a party to. They were named as a party, and that's in the case caption. When we start talking about foreclosures, I mean, there's a scenario that could have taken place here where you could have proceeded to foreclosure after these forbearance agreements were in place, correct? That's correct. Now, what law controls that? Because there are specifics in the foreclosure law as to what you have to do to get your rents. I agree, Judge. And if a foreclosure is filed, I think clearly the foreclosure statute applies. That's what it says in its language. These rules govern possession once a foreclosure is filed, and you must seek the appropriate remedy, mortgagee in possession, receiver. You must show that you have that ability in your loan documents. You have protections for tenants. That is consistent, and we have never argued that that would not be the case if a foreclosure was filed. However, the assignment of rent statutes takes us back. It allows, by its specific language, the lender and the mortgagor to enter into an agreement. So if there's no dispute, and there was no dispute here with JCI, if they agree, then those agreements are specifically allowed. The minute there's a disagreement, my client as a lender needs to go to court. He needs to get a determination because, of course, there's no longer an agreement. Are those agreements void as against public policy? I don't believe so, Judge, because all of those agreements allow for, first of all, the same party to collect the rents as has always been collected. That is a management company. There's actually a management company in place for these tenants. Some of the rents did go right to the banks. The one. In Rockford Bank and Trust, the checks would be collected by Briargate, and then they would be deposited if there were actual checks. But all the expenses would then be paid. And so the tenants... Paid by whom? Paid by Briargate. What was the priority of payment? I thought the priority of payment was they paid their mortgage and taxes and stuff first, and then it went into that Briargate account to pay for their expenses. For Rockford Bank and Trust, that's correct. So what if the rents didn't exceed the mortgage and the taxes? Well, then I think Rockford Bank and Trust, as a lender, would have a decision to make. Now, remember, it's collateral. It doesn't want it to be wasted after going through all these steps. It doesn't want waste to occur. So perhaps Rockford Bank and Trust would have to supplement the amounts. But there's, of course, no information in the record that says that that ever happened. And the tenants were protected. The property was protected. Are you saying that, in essence, there was no evidence of a breach of the rent of profits doctrine? Correct. And I think that, as we've indicated, you know, a unilateral action by a lender to strip the rents, as was in the Comerica case, was perhaps, you know, I think it was rightly decided. But it's not the issue here. In Comerica, the mortgagor was objecting. There was no venue for a mortgagor who's objecting to get their objections heard. And so I think that's a very different case. None of the cases, but for the West Bend case, are between an adverse claimant and a judgment creditor. They're all between the mortgagor and the mortgagee, and there's no agreement. The statute allows the agreements. And it specifically talks about not only perfection and clarifies that perfection by recording is the only step that a lender needs to perform in order to have priority, but it also talks about enforcement. And it talks about enforcement with respect to between the assignor and the assignee. If there's no agreement, then the assignee has to go and enforce the provision under applicable law. That is, you have to file a foreclosure once there's no agreement. So I think that while the statute, which is controlling here, codified the common law as to how do you perfect, you record, but it did more, and it did more in its very specific language. It talked about the agreements that could be in place, and I think that's a good public policy. I think if the position of BMO is accepted, then you're encouraging more litigation because secured lenders would have to file suit immediately upon a default. What if the rents in this case exceeded all the costs, the mortgage, taxes, repairs, maintenance, private use management fees? Where would that money go? I believe it would just stay there. There's obviously no information in the record on that, but I think under the agreements, it would just stay in those accounts, and it would be there to be able to protect the property. It just seems like in this case particularly and in general that a mortgagor could use 31.5 as a sword as opposed to a shield, a sword against judgment creditors. By creating an agreement that would protect. That would allow them to keep the money in this account, but basically keep their property, keep the property up for a time, for however long I guess the agreement's in place. I'm just saying, we're talking about if there's less money. If there's excess money, shouldn't that excess money be going to judgment creditors as opposed to sitting in some account somewhere potentially for the benefit of the property or a mortgagor? Well, Your Honor, I think there are a couple different policies there. If there's excess money, perhaps it should go to the mortgagor or some other judgment creditor, but this is the collateral of a particular lender, and perhaps it should go to also decrease the debt to the lender, which also benefits the mortgagor by increasing their equity. So I think there's a couple different policies there, but in this case. The facts here, though, were that the mortgagor, after receiving or being served with the citation notices, entered into these forbearance agreements, at least two of them. A couple of them were at or about the time of the service of the citation on JCI. They were well prior to the service of the citation on Briargate. Right, right. No, I'm just talking about the mortgagor who says, I'm going to protect my assets here. Yes, they were at or about that time, but again, I think we were also talking about property and in the time period when the values of property and the rents that were able to be collected were not perhaps as sufficient given the mortgage crisis and the property crisis. Any other questions? Yeah, we're doing a lot of speculating here. What if there isn't enough money? What if there's too much money? Is that a question that should have been addressed by the trial court, exactly how much money was there? Was it too much? Was it not enough? Or is it waived? I think it's waived. I do think there was information that BMO Harris was allowed to obtain as to how much money was actually being collected. I think the record is replete with documents of Briargate's checking accounts and how much each set of properties had for expenses, so I think that information was there. But I don't think BMO Harris did anything with that, and I think that issue is waived for all the reasons that we previously cited. So we shouldn't really speculate? I don't think so. Is that your position? That's my position, Judge. Any other questions? Thank you, Your Honors. Mr. Wasserman. Your Honors, what the adverse claimants are requesting that this Court do is take Illinois away from a bright-line public policy test where a lender has to obtain constructive possession with court authority and move us to a murky test where we're kind of looking at every agreement. Does it coincide with the rents and profits rule, or is it acceptable? Does it maintain the property right? Who gets the rents? And nothing in the legislative intent and so forth shows that the legislature was trying to do anything other than codify the common law. The common law has always been that we need court authority. We have a bright-line test, a bright-line test that protects borrowers, protects tenants, it protects the properties, it explains how if you're going to take the benefit of these rents, you must maintain all of the burden that comes with it. And it's moving us away from that. It's moving us away to kind of a murky case-by-case situation. And it's a case-by-case situation that runs straight afoul of the rents and profits rule. And it wouldn't allow for arguments consistently of were they allowed to take the rents, how they took the rents, was it acceptable, did they do the things that they needed to after they took the rents to maintain the properties. And right now we have a very bright-line test. It's a bright-line test that's been the test for, you know, before this amendment and before the enactment of legislation and currently remains it. Every case has said court authority is necessary. You know, if the employer's claims didn't enforce these liens properly and all the rent money went to bribery but actually that rent money belonged, according to the agreement between JCI and bribery, it belonged to JCI, then you'd be entitled to that, correct, those rents? Yeah, that's our whole argument. Okay, then how does that not violate the rents and profits doctrine? Because we are not seeking turnover of rents. We are seeking, and our argument is that the nature of these funds, once they're collected, they're no longer rents. They just belong to the borrower. Whatever protections the legislature wanted to enact, they enacteded with 735 ILCS 5-2-1402. Whatever exemptions and so forth that the borrower or judgment debtor has, the legislature said, you have these rights once these funds are in yours. But once they were collected, and this was, we believe, the mistake the trial court made, was they're no longer rents. They're just simply funds, and they do not, the adverse claimants do not maintain a lien on those funds. So you're basically saying that once the rent was turned into fungible dollars, that the assignment of rents that were essentially assigned and depositable or negotiable by the S&A no longer has any ownership or possessory rights. For some reason, those rights revert back to your judgment debtor. Your Honor, to answer your question the short way first, yes. To answer it a little longer, there's a term that the Seventh Circuit has used, particularly from this side, which is, that lien evaporates. I'm sorry? The lien evaporates. Whatever lien you have on the rents, whether it belonged to the part of the property, you had a lien on those rents, but once they're collected, the borrower does not have to account for those rents and no lien. I'll buy the argument that a lien can evaporate in a variety of ways, but I've never experienced a situation where, in the process of the lien evaporating, that the money and its ownership and its possessory rights reverted back to the original party. In other words, let's say we have a mechanic's lien or an artisan's lien, and the money is paid over and then the goods are returned or whatever. When they take it to the bank and deposit it, you're suggesting that those funds no longer belong to the artisan or to the mechanic. They now belong to whom? I guess, Your Honor, I have to disagree with the premise of the question a little bit. What's the premise? The premise is that the adverse claimants ever had a right of possession of these rents. They never had a right. A possessionary right to the rents. They never had an adverse right even though they had a lien? They had a lien, but it's the difference between a lien state and a title state. As a lien state, they have a lien on the rents until they were deposited. They never had title to them. And what they're claiming is that we have title to them even though we've never actually enforced our lien here. What they're actually claiming is they don't actually really have to enforce their lien. They can just keep it out there for as long as they want. I'd like to talk about one other, Your Honor. Just back up a second. Sure. All right, so your position is basically all these rents are paid, and once they fall into the hands of JCI, they are now just fungible and you can attach them and take them. Correct. What happens to the tenants under that theory? Your Honor, what we would suggest is that once they're fungible funds, they're no longer rents, and we look to the protections provided by 1402 of the citation statute. We're outside of the rents world. They're just... That wasn't my question. That was a nice spin, but it didn't answer my question. I appreciate it. The question is, what happens to the tenants? Your Honor, it is a situation where that the lenders would have to go in and obtain construction, obtain possession, and start retaining their properties. What we're saying is once these funds are collected, they no longer are rents, and those concerns just kind of move away because they're not rents. They're just purchasing property. Is that also part of the balancing in public policy? It obviously is. Okay. Any other questions? Thank you. We'll take a case under advisement. Court's adjourned. Thank you very much. Thank you.